In the Matter of James Wann
VAUGHAN, Debtor.

James Wann VAUGHAN, Appellant,

v.

CENTRAL BANK OF THE
SOUTH, Appellee.

Civ. A. No. 83–AR–5757–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Feb. 3, 1984.

William W. Tally, Scottsboro, Ala., for plaintiffs.

Morgan Weeks, Scottsboro, Ala., for Central Bank—Commercial Loan Dept.

Ralph W. Hornsby, Huntsville, Ala., for J.C. Vaughan.

Philip A. Geddes, Decatur, Ala., Trustee.

## MEMORANDUM OPINION

ACKER, District Judge.

The Court has for consideration the appeal by the debtor, James Wann Vaughan (debtor), from an order entered by Hon. Edwin D. Breland, bankruptcy judge, on September 22, 1983, granting the motion of a creditor Central Bank of the South (Central). The notice of appeal was filed on October 3, 1983. On November 21, 1983,

debtor filed an alternative motion in this Court for a hearing *de novo* of Central's motion in the bankruptcy court to dismiss debtor's Chapter 13 petition, or, in the alternative, to require debtor to convert to a Chapter 7 or a Chapter 11 proceeding. To grant debtor's alternative motion would, of course, require a trial by this Court on the very issues already tried by the bankruptcy court.

## COMPLIANCE WITH BANKRUPTCY RULE 8012

Neither party has requested oral argument, and pursuant to Bankruptcy Rule 8012 the Court finds that oral argument is not needed.

## THE LACK OF A RECORD

In the bankruptcy court's order of September 22, 1983, the bankruptcy judge expressly refers to an oral hearing which he held on August 15, 1983. He says: "From the evidence presented and testimony heard, the Court makes the following findings". The "findings" which follow this statement by the bankruptcy court necessarily bring Rule 8013, Bankruptcy Rules, into play. Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. *Findings of fact shall not be set aside unless clearly erroneous,* and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. (emphasis supplied).

This rule, which became effective on August 1, 1983, and therefore was applicable during the hearing of August 15, 1983, contemplates that the reviewing court (here this Court) must have before it a record sufficient to present the basis or bases upon which the lower court made its decision. It is apparent from the appeal record, as here designated by the parties, that pure issues of law are not presented and were not presented to the bankruptcy court. This absence of a sufficient record of the evidence leads this Court to a discussion of the following assertion made by debtor in his motion for a *de novo* hearing:

"The bankruptcy court below did not transcribe the hearing."

Debtor suggests that the fact that the bankruptcy court did not furnish a recording device or a court reporter eliminates all presumptions in favor of the bankruptcy judge's findings. Debtor would have this Court treat the order of the bankruptcy court as if it does not exist, and asks this Court to conduct a *de novo* hearing. For his position debtor relies on 28 U.S.C. § 773(a) and (b), which on April 1, 1984, will require that bankruptcy courts have available an electronic sound recorder or a court reporter for all proceedings. While no reason appears in the instant record for there not having been a court reporter or an electronic sound recorder on August 15, 1983, neither does it appear in the record that debtor insisted on any record being kept. The question of whether or not a party to a hearing *ore tenus* in a bankruptcy court can waive the making of a record is rendered academic by the fact that until April 1, 1984, there will be no legal requirement for a bankruptcy court to provide a recording device or a court reporter. This simply means that any party to a proceeding held prior to April 1, 1984, and who contemplates a possible appeal, is responsible for preserving the record of the evidence, and is responsible on appeal for presenting the pertinent record to the appellate court. This has long been the rule for an appellant's responsibility in most courts. Where there is no legal requirement that the lower court itself furnish the complete record, it is the appellant's responsibility. It is, of course, possible for an appellant and an appellee to stipulate an adequate record or for an appellant to present what used to be called a bill of exceptions based upon the appellant's recollection of the evidence as confirmed by the lower court. These methods were not here employed.

While bankruptcy courts have anticipated the obligation which will be effective under 28 U.S.C. § 773 on April 1, 1984, and are

already regularly furnishing court reporters, they are not now legally obligated to do so. Section 404(e) of the Bankruptcy Act of 1978 provides that during the transition and prior to April 1, 1984, "bankruptcy judges ... *may* appoint ... court reporters...". (emphasis supplied). This language creates a *prerogative* in the bankruptcy judges. It does not create a *legal obligation.* Thus, prior to April 1, 1984, the Congress and the Bankruptcy Rules leave the responsibility with a "would-be" appellant to preserve and to furnish the appellate materials necessary for an appellate decision. Rule 8006, Bankruptcy Rules, which was effective August 1, 1983, may create an anomaly when it contemplates that the record designated by a party may include "a transcript of any proceeding", in instances where no record is kept, but nowhere does Rule 8006 require that a bankruptcy court preserve such a record. Instead, it requires that the parties "take any other action necessary to enable the clerk to assemble and transmit the record", language consistent with an appellant's traditional responsibility for the appellate record.

Rule (e)(2)(B) of the Continuing Rule adopted by this Court on December 22, 1982, *permits this Court* to hold a *de novo* hearing, but does not *require* it to do so. Rule (d)(2) provides that "orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court ...". The Continuing Rule does not provide an automatic trial *de novo* where no transcription of the record is possible because no recording was made. Therefore, this Court exercises its discretion under the Continuing Rule and will deny debtor's motion for a *de novo* hearing.

### WAIVER OF REPORTING REQUIREMENT

■ If the Court should be incorrect in its conclusion that prior to April 1, 1984, there is no obligation in the bankruptcy court to preserve a record, the question remains as to whether or not a party to a bankruptcy proceeding must insist on the bankruptcy court's fulfilling the obligation to provide a reporter or a tape recorder on penalty of waiving his right to an appellate record. In the instant record there is no indication that debtor complained in any way about the absence of a recording device or a court reporter. It is apparent that he went forward without either. The Court therefore concludes that debtor waived any right to complain on appeal, as he now does, that "the bankruptcy court below did not transcribe the hearing".

### ON THE MERITS

Although this Court is of the opinion that the bankruptcy court is due to be affirmed because of the presumption in favor of its findings where the appellate record is totally inadequate, the Court will nevertheless briefly address the merits of the issues presented on debtor's appeal, using debtor's version of the pertinent facts as set forth in his own brief. The bankruptcy court found that debtor had "unsecured", "noncontingent" "liquidated" debt in excess of $100,-000 and was thus ineligible to file a Chapter 13 petition. The bankruptcy court gave debtor three options: (1) to convert his Chapter 13 petition to a Chapter 7; or (2) to convert to a Chapter 11 petition; or (3) to suffer a dismissal. The applicable statutory provision, 11 U.S.C. § 109, states:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontigent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

In his brief debtor lists his unsecured debts as:

| | | |
|---|---|---|
| Central Bank | unsecured and disputed (adversary proceeding filed with petition) | $87,000.00 |
| Billy Honea | unsecured and disputed | 50,000.00 |
| Fandrich Supply | unsecured and disputed (with set-off claimed) | 3,200.00 |

Debtor's brief, p. 5.

Thus, debtor admits that his unsecured debts are in excess of $140,000. This Court is asked to decide whether or not the bankruptcy court was correct in concluding that these amounts are also "liquidated" and "noncontingent".

## WERE THE CLAIMS LIQUIDATED?

■ Although the Bankruptcy Code does not define the word "noncontingent" (or, for that matter, the word "contingent"), or the word "liquidated", the term "debt" is defined in 11 U.S.C. § 101(11) as "liability on a claim". Whether a claim is "liquidated" or "unliquidated" is addressed by Prof. McCormick in his handbook entitled *Damages,* as follows:

> A claim is liquidated if the evidence furnishes data which, if believed makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate. If the claim is one of the kinds mentioned above, it is still "liquidated", by what seems the preferable view, even though it is disputed in whole or in part.

C.T. McCormick, *Damages* § 54 p. 213 (1935).

This view is expressed in the bankruptcy context in *In re Sylvester,* 19 B.R. 671 (Bkrtcy.App. 9th Cir.1982), where the Ninth Circuit states:

> A meaning [of the term "liquidated"] that is consistent with the [Bankruptcy] Code is found in a Bankruptcy Act Case, *In re Bay Point Corp.,* 1 B.C.D. 1635 (D.N.J.1975):
>
> > "The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due .... Some cases have stated the test as whether the amount due is capable of ascertainment by ref-

erence to an agreement or by simple computation."

> Under this approach, contract debts (even though disputed) are considered liquidated, and tort claims are not.

19 B.R. at 673.

This contrast between "liquidated" and "unliquidated" is further dramatized by debtor's citing of tort cases for the proposition that his disputed claims should not be included in calculating eligibility under Chapter 13. These cases merely point out that tort claims are generally considered "unliquidated". *See In re King,* 9 B.R. 376 (Bkrtcy.D.Oregon 1981); and *In re Cole,* 3 B.R. 346 (Bkrtcy.S.D.W.Vir.1980).

Debtor attempts in his brief to intertwine and to equate the term "disputed" and the term "liquidated". His attempt is understandable. However, the terms are separate and distinct. The court in *Sylvester, supra,* summarized the situation aptly, stating:

> [T]he "fact that the respondent may have defenses or counterclaims against the claimant would not affect the note's character as liquidated...."

\* \* \* \* \* \*

Accordingly, even if Sylvester had a valid counterclaim for more than the amount of Dow Jones' claim, he could not qualify for Chapter 13 because of the liquidated claim (although subject to offsets) was in excess of $100,000.

> In summary, the Dow Jones claim was liquidated on the date of filing because it was based on contract and the amount of the claim was readily ascertainable; the fact the claim was disputed was not relevant for purposes of § 109(e), and the fact it was subject to defenses and counterclaims was likewise not relevant.

19 B.R. at 673.

Debtor's obligation to Central is thus "liquidated" for the previously stated reasons. The amount is based on a contract, and the amount due is readily calculable.

Congress sets the limits as to who qualifies to file for bankruptcy under Chapter 13. This Court cannot find in any legisla-

tive history where Congress contemplated allowing disputed claims to be excluded from the calculation of the maximum allowable debt. This Court can only speculate that any such statutory language would cause a flood of "disputes" over liabilities which, if allowed to translate a claim into an unliquidated claim could utterly thwart the judicial process in bankruptcy proceedings. It is easy to envision debtors regularly using such a "dispute" technique as a stalling device. If such a device were given judicial recognition it would create havoc. The unscrupulous would file a Chapter 13 petition and then "dispute" the unsecured debts, force the litigation to continue under Chapter 13, and then after months of costly delay the bankruptcy court would find that all had been in vain because the "disputes" were only imagined and that the bankruptcy court lacked jurisdiction to adjudicate the claims.

## WERE THE CLAIMS NON–CONTINGENT?

Debtor does not even argue in his brief that the amounts due his creditors are "contingent". He merely argues that the amounts are "disputed". This Court therefore accepts debtor's contentions in his brief that the amounts listed are due and thus are "non-contingent". There is simply no basis for any serious argument that the debtor's non-contingent debt is less than $100,000 in this case.

The intent of Congress as regards 11 U.S.C. § 109(e), is that eligibility for Chapter 13 is:

> to make individuals who owe, at the commencement of the case, unsecured debt in excess of $100,000 ineligible for Chapter 13 even though the debtor disputes all or part of that indebtedness.

*In re Sylvester,* 19 B.R. 671, 673 (Bkrtcy. App. 9th Cir.1982)

The conclusions reached by the bankruptcy court on the merits have a rational basis and are due to be affirmed.

An appropriate order is being contemporaneously entered.